UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------x
EUGENE NEWELL,

Plaintiff,

15 Civ. 7095 (PKC) (DF)

-against-

ORDER ADOPTING REPORT AND<br>RECOMMENDATION

CAROLYN W. COLVIN, ACTING
COMMISSIONER OF SOCIAL SECURITY,

Defendant.
--------------------------------------------------------------x

P. KEVIN CASTEL, District Judge:

Plaintiff Eugene Newell brings this action pursuant to Section 205(g) of the Social

Security Act (the "Act"), 42 U.S.C. § 405(g), to challenge the final determination of the

Commissioner of Social Security ("the Commissioner") denying his application for supplemental

security income and disability insurance benefits. Both parties have moved for judgment on the

pleadings pursuant to Rule 12(c), Fed. R. Civ. P. On June 6, 2016 this case was referred to

Magistrate Judge Debra Freeman to hear and report. On March 1, 2017, Judge Freeman issued a

Report and Recommendation (the "R&R") pursuant to 28 U.S.C. § 636(b) and Rule 72(b), Fed.

R. Civ. P., recommending that Newell's motion for judgment on the pleadings be granted, the

Commissioner's motion be denied, and that the case be remanded to the Commissioner solely for

the calculation and payment of benefits to Newell, or alternatively, for further administrative

proceedings. The Commissioner filed timely objections to the R&R. For the reasons that

follow, this Court adopts Judge Freeman's R&R in substantial part but with certain

modifications, grants in part Clark's motion for judgment on the pleadings, and denies the

Commissioner's motion for judgment on the pleadings.

BACKGROUND

Newell applied for supplemental security income and disability benefits on March 27, 2009, alleging an onset date of December 31, 2007. (Administrative Record "AR" 50, 135, 142). Newell asserts that he suffers from mental health issues including depression, as well as chronic neck, back, and leg pain which he claims have rendered him unable to work. Over the years Newell has received treatment from numerous medical professionals including psychiatrists, therapists, physicians, physical therapists and chiropractors. He was also examined by several consultative physicians as part of his application for social security benefits.

The Social Security Administration ("SSA") denied Clark's application for benefits on June 22, 2009 and Newell requested a hearing before an administrative law judge ("ALJ") on August 6, 2009. (R&R 29; AR 67, 79). A hearing was held on September 24, 2010 before ALJ Roberto Lebron where Newell appeared with his attorney, Tara Johnson, Esq. (R&R 29, AR 1-44). ALJ Lebron issued a decision on November 19, 2010 denying Newell's application for disability benefits and finding that Newell was not disabled within the meaning of the Act from December 31, 2007 through the date of his decision. (AR 50-58). Newell appealed the ALJ's decision but the Appeals Council denied his request for review on January 25, 2012 at which point the ALJ's decision was rendered final. (R&R 33; AR 64).

Newell appealed this decision to this Court on February 17, 2012 but before the Commissioner answered, the parties stipulated that the action should be remanded for further administrative proceedings. (AR 543-47). The case was remanded on September 12, 2012. (AR 545). After the Appeals Council vacated ALJ Lebron's November 29, 2010 decision, a second hearing was held in front of ALJ Lebron on July 11, 2013. (AR 548-52, 433-71). Newell was represented by attorney Gary Gogerty, Esq. at the second hearing. (AR 435). ALJ Lebron left

the SSA before issuing a final decision in Newell's case and the case was reassigned to ALJ Robert Gonzalez. (AR 600, 474). A third hearing was held in front of ALJ Gonzalez on February 3, 2015 at which Newell was again represented by Mr. Gogerty. (AR 472-542, 472). ALJ Gonzalez issued a decision denying Newell's application for supplemental social security income and disability benefits on May 28, 2015. (AR 408-25). This appeal followed.[1]

In reviewing ALJ Gonzalez's decision, Magistrate Judge Freeman concluded that the ALJ erred in not finding Newell disabled under Listing 12.05C (intellectual disability), improperly evaluating the opinions of his treating physicians, and inappropriately assessing Newell's credibility. (R&R 54). The Commissioner filed timely objections to each of these conclusions. (Dkt. 24).

DISCUSSION

A.  Standard of Review.

In reviewing a Report and Recommendation, a district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C). In the event that a party files objections to the magistrate judge's recommendations, district courts conduct a *de novo* review of those matters to which a party filed an objection. Id. § 636(b)(1)(B), (C).

When reviewing a Social Security claim, this Court does not determine *de novo* whether the plaintiff is disabled and therefore entitled to disability benefits. See Schaal v. Apfel, 134 F.3d 496, 501 (2d Cir. 1998). Rather, the reviewing court determines only "whether the

---

[1] As the R&R explains, no party has identified any action by the Appeals Council regarding ALJ Gonzalez's May 28, 2015 decision. (R&R 2 n.2). However, the Commissioner has not raised an exhaustion defense and admitted in her Answer that this action is "an appeal from a final administrative decision." (Complaint (Dkt. 1) ¶ 2; Answer (Dkt. 11) ¶ 2). As the Commissioner has discretion to waive the exhaustion requirement, Escalera v. Comm'r of Soc. Sec., 457 F. App'x 4, 2 (2d Cir. 2011) (summary order), this Court's jurisdiction over the matter is proper under 42 U.S.C. § 405(g).

Commissioner's conclusions 'are supported by substantial evidence in the record as a whole or are based on an erroneous legal standard.'" Id. (quoting Beauvoir v. Chater, 104 F.3d 1432, 1433 (2d Cir. 1997)); see also Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999) (explaining that a court will only overturn the ALJ's decision if it is "based upon legal error" or "not supported by substantial evidence") (internal quotation marks omitted).

Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (internal citation and quotation marks omitted). However, "[i]n conducting [its] review . . . [the Court] will not substitute [its] own judgment for that of the Commissioner, even if [it] 'might justifiably have reached a different result upon de novo review.'" Campbell v. Astrue, 465 F. App'x 4, 5 (2d Cir. 2012) (summary order) (quoting Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir. 1984)). "Even where the administrative record may also adequately support contrary findings on particular issues, the ALJ's factual findings 'must be given conclusive effect' so long as they are supported by substantial evidence." Genier v. Astrue, 606 F.3d 46, 49 (2d Cir. 2010) (per curiam) (quoting Schauer v. Schweiker, 675 F.2d 55, 57 (2d Cir. 1982)).

The Social Security Act defines a "disability" as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To determine whether a claimant is entitled to disability benefits, the ALJ must follow a five-step sequential analysis. See 20 C.F.R. § 404.1520(a)(1). In this Circuit, the five step process is described as follows:

First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience . . . . Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Rosa, 168 F.3d at 77 (quoting Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam)). At the fifth step, "[i]f the ALJ concludes that there is work in the national economy that the individual can perform, then the ALJ must determine that the individual is not disabled." Gabrielsen v. Colvin, No. 12 Civ. 5694 (KMK) (PED), 2015 WL 4597548, at *2 (S.D.N.Y. July 30, 2015) (citing 20 C.F.R. § 404.1520(a)(4)(v)). "Until the final step in this process, the burdens of production and persuasion remain solely with the claimant." Lopez v. Comm'r of Soc. Sec., 622 F. App'x 59, 60 (2d Cir. 2015) (summary order) (citing Balsamo v. Chater, 142 F.3d 75, 80 (2d Cir. 1998)).

B. Analysis.

The Court adopts the extensive recitation of the facts set out in Judge Freeman's R&R, (R&R 2-39), and assumes the parties' familiarity with it. The Court will only repeat those facts that are relevant to the consideration of the Commissioner's objections.

The Commissioner objects to Judge Freeman's recommendation that the Commissioner's motion be denied and that the case be remanded for calculation of benefits or, in the alternative, for further administrative proceedings. First, the Commissioner argues that

substantial evidence supported the ALJ's determination at step three of the sequential evaluation

that Newell did not satisfy the requirements for Listing 12.05C (intellectual disability).

(Comm'r's Objections 1-8).  Second, the Commissioner asserts that the ALJ fulfilled his duty to

obtain records from Newell's treating psychiatrist, Dr. Naeem Aftab, and properly determined

that Dr. Aftab's opinions did not merit controlling weight.  (Id. 9-10).  Finally, the Commissioner

argues that the ALJ appropriately evaluated Newell's credibility.  (Id. 11-12).  The Court reviews

the portions of the R&R to which the Commissioner objected de novo.

> a.  Listing 12.05C.

At step three of the sequential evaluation, the ALJ must determine if, based on the

medical evidence, the claimant suffers from an impairment listed in Appendix 1, referred to as

a"Listing."  Rosa, 168 F.3d at 77.  If the claimant has such an impairment, he is considered

disabled under the Act, and the ALJ need not analyze other factors such as age and education.

Id.  In this case, ALJ Gonzalez considered several Listings including Listing 12.05 (Mental

Retardation).  (AR 412-13).  Listing 12.05 states, in relevant part:

> Mental retardation: Mental retardation refers to significantly
> subaverage general intellectual functioning with deficits in
> adaptive functioning initially manifested during the developmental
> period; i.e., the evidence demonstrates or supports onset of the
> impairment before age 22.  The required level of severity for this
> disorder is met when the requirements in A, B, C, or D are satisfied.
>                         *  *  *  *
> C.    A valid verbal, performance, or full scale IQ of 60 through
> 70 and a physical or other mental impairment imposing an
> additional and significant work-related limitation of function;

20 C.F.R. Pt. 404, Subpt. P, App. 1. § 12.05C.  Therefore, to establish that he

meets the requirements of Listing 12.05C, a claimant must demonstrate: (1) significantly

subaverage general intellectual functioning and (2) deficits in adaptive functioning, both initially

manifested before age 22; (3) a valid IQ score of 60 through 70; and (4) another severe physical

or mental impairment.  See Talavera v. Astrue, 697 F.3d 145, 152-53 (2d Cir. 2012); Miller v.

Astrue, No. 07 Civ. 1093 (LEK) (VEB), 2009 WL 2568571, at *4 (N.D.N.Y. Aug. 19, 2009).

        As the R&R explains, the first requirement – that a claimant demonstrate

significantly subaverage intellectual functioning initially manifested before age 22 – may be

established through circumstantial evidence of reduced intellectual functioning or through

evidence of a valid full scale IQ score between 60 and 70.  (R&R 56 (citing Talavera, 697 F.3d at

152 and Davis v. Astrue, No. 06 Civ. 657 (LEK), 2010 WL 2925357, at *4 (N.D.N.Y. July 21,

2010))).  In addition, because courts presume that an individual's IQ remains relatively constant

throughout his life, evidence of an IQ test administered in adulthood "suffices to meet [the]

prima facie burden of establishing that [a claimant] suffers from significantly subaverage general

intellectual functioning . . . initially manifested . . . before age 22." Talavera, 697 F.3d at 152

(internal quotation marks omitted).

        A claimant must also show that he suffers from deficits in adaptive functioning

that initially manifested prior to age 22.  See id. at 153.  "Adaptive functioning refers to an

individual's ability to cope with the challenges of ordinary everyday life." Id. (internal quotation

marks omitted).  Factors that courts consider when evaluating a claimant's adaptive functioning

include communicating and socializing with others, living on one's own, paying bills, caring for

children, shopping, cooking, cleaning, driving and other activities of daily life.  See, e.g., id.;

Hooper v. Colvin, 199 F. Supp. 3d 796, 811 (S.D.N.Y. 2016).  However, a claimant need not be

"completely helpless or unable to function" to be found disabled under the Act.  Gold v. Sec'y of

Health Educ. & Welfare, 463 F.2d 38, 41 n.6 (2d Cir. 1972); Stephens v. Colvin, 200 F. Supp. 3d

349, 360 (N.D.N.Y. 2016) ("Listing 12.05 does not require a complete lack of adaptive

functioning, and Plaintiff need not be completely helpless in order to be deemed as having deficits in adaptive functioning.").

Finally, courts have found that the standard for determining whether a claimant meets the last requirement of Listing 12.05C – an additional severe physical or mental impairment – is whether the additional impairment qualifies as "severe" as defined in step two of the five step sequential analysis. See, e.g., Baneky v. Apfel, 997 F. Supp. 543, 547 (S.D.N.Y. 1998); Salem v. Colvin, No. 12 Civ. 1441 (MAD) (VEB), 2014 WL 975696, at *5 n.4 (N.D.N.Y. Mar. 12, 2014) (noting that while the Second Circuit has not yet ruled on the issue, "[t]he district courts of the Second Circuit have generally adopted the view of the First, Eighth, and Tenth Circuits to the effect that a[n additional] limitation . . . is 'significant' if the claimant suffers from an additional physical or other mental impairment that is 'severe' as that term is defined at step two of the Commissioner's sequential analysis.") (internal quotation marks omitted) (collecting cases).

In his decision, the ALJ concluded that Newell did not have an impairment that met or medically equaled Listing 12.05. (AR 413). Although a January 2015 intelligence evaluation performed by consultative psychologist Dr. Leslie Helprin showed that Newell had a full scale IQ of 63 (AR 1129), the ALJ found that this was not a "valid" full scale IQ because it was "poorly supported by the claimant's adaptive functioning skills." (AR 413, 418). Because the ALJ found that Newell did not have a valid IQ score between 60 and 70, he did not address the threshold requirement that a claimant also display deficits in adaptive functioning. However, in finding the IQ score invalid, the ALJ described Newell's "adaptive functioning skills" as "driving, traveling independently by taxi, living on his own, taking care of personal hygiene as

well as . . . his personal finances, and having a long work history prior to the period he was alleging disability." (AR 418).

Magistrate Judge Freeman concluded that both the ALJ's decision not to credit the IQ evaluation done by Dr. Helprin and his "apparent conclusion" that Newell did not manifest deficits in adaptive functioning were not supported by substantial evidence. (R&R 61-62, 64). Accordingly, Judge Freeman recommended that this Court reverse the ALJ's decision and remand solely for the calculation and payment of benefits. (R&R 65).

The Court agrees with Judge Freeman that substantial evidence did not support the ALJ's conclusion that the IQ evaluation administered by Dr. Helprin in 2015 was invalid. The only reason the ALJ gave for this conclusion was that the IQ was poorly supported by Newell's adaptive functioning skills. (AR 418). However, the Second Circuit has made it clear that adaptive functioning and intellectual capacity are independent concepts and should be evaluated separately. See Talavera, 697 F.3d at 153 (describing the two as "separate burden[s]" and noting that "there is no necessary connection between an applicant's IQ scores and her relative adaptive functioning"). In fact, the Second Circuit specifically explained that "persons with an IQ in the 60s (or even lower) may still be able to hold a full-time job, and are therefore not disabled, if their adaptive functioning is sufficiently intact. Id. (internal quotation marks omitted). The question the ALJ must answer in evaluating a claim under Listing 12.05 is not whether the IQ score is "supported by" the claimant's level of adaptive functioning but whether the claimant has both significantly subaverage intellectual functioning (as evidenced by the low IQ) and deficits in adaptive functioning. See 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.05.

It is true that an ALJ may consider an IQ score invalid when it is inconsistent with the record. See Burnette v. Colvin, 564 F. App'x 605, 608 (2d Cir. 2014) (summary order).

However, in finding the ALJ did not err in according an IQ score little weight, the court in Burnette cited conflicting evidence in the record regarding the claimant's intellectual functioning, such as not having taken special education classes and completing some college, rather than evidence in the record regarding the claimant's ability to cope with everyday life. Id. (ALJ properly accorded IQ score little weight where claimant's "treating doctors regularly found that she suffered from no apparent cognitive limitations or merely had poor concentration, and, as noted, [claimant] did not need special education classes in high school and even attended college" and found insufficient deficits in adaptive functioning where claimant had "been able to live alone, obtain a driver's license, take public transportation, shop for food, and pay her bills").

Here, while the evidence of Newell's daily living skills may support a finding that he lacked deficits in adaptive functioning, the evidence in the record regarding his intellectual functioning supports Dr. Helprin's IQ evaluation. The record shows the Newell took special education classes in high school and was awarded an IEP diploma which is not equivalent to a traditional high school diploma. (See e.g., AR 35, 150). He also reported that he was unable to write his name until sixth or seventh grade. (AR 1127). Newell's treating psychiatrist reported that he was "cognitively slow" and "unable to do simple calculations at times," a social worker who met with Newell in August 2009 noted that his intelligence "need[ed] investigation," and in her 2009 evaluation, Dr. Helprin described Newell's intellectual skills as "in the borderline range." (AR 224, 291, 898). In addition, Dr. Helprin concluded that her 2015 test results were "valid and reliable," (AR 1128), and as the R&R points out, the ALJ "did not challenge Dr. Helprin's qualifications, the legitimacy of the test the she administered, or [Newell's] behavior during the test." (R&R 59). Therefore, the Court finds that substantial

evidence did not support the ALJ's determination that the results of Dr. Helprin's 2015 IQ tests were invalid.

After finding the IQ score to be invalid, the ALJ did not conduct an independent evaluation of Newell's level of adaptive functioning. Therefore, the Court cannot evaluate whether his decision as to the application of Listing 12.05C was supported by substantial evidence. On remand, the ALJ should determine whether Newell's condition meets the other requirements of Listing 12.05C.

### a.  Treating Physician Rule.

The opinion of a claimant's treating physician is entitled to controlling weight as to the nature and severity of an impairment as long as it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence . . . in [the] record." 20 C.F.R. § 404.1527(c)(2); see also Halloran v. Barnhart, 362 F.3d 28, 32 (2d Cir. 2004). An ALJ who declines to afford a treating physician's opinion controlling weight must provide "good reasons" for doing so. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); see Aung Winn v. Colvin, 541 F. App'x 67, 70 (2d Cir. 2013) (summary order). Failure to provide such "good reasons" is grounds for remand. See Snell v. Apfel, 177 F.3d 128, 133 (2d Cir. 1999); Selian v. Astrue, 708 F.3d 409, 419 (2d Cir. 2013) (per curiam). In order to determine the amount of weight to assign to a treating physician's opinion, an ALJ must consider factors such as the length, nature, and extent of the treatment relationship, the frequency of examination, the medical support for the opinion, the consistency of the opinion with the record as a whole, and the physician's area of specialization. 20 C.F.R. § 404.1527(c)(1)-(6); see Schisler v. Sullivan, 3 F.3d 563, 567 (2d Cir. 1993). These factors are intended to guide an ALJ's assessment of a physician's opinion, but the ALJ need not expressly

address each one. Atwater v. Astrue, 512 F. App'x 67, 70 (2d Cir. 2013) (summary order) ("We require no such slavish recitation of each and every factor where the ALJ's reasoning and adherence to the regulation are clear.").

Even where a treating physician's opinion is contradicted by substantial evidence and therefore not entitled to controlling weight, it is entitled to "some extra weight . . . because the treating source is inherently more familiar with a claimant's medical condition than are other sources." Cruz v. Sullivan, 912 F.2d 8, 12 (2d Cir. 1990) (quoting Schisler v. Bowen, 851 F.2d 43, 47 (2d Cir. 1988)). In contrast, opinions of consulting physicians "should be given little weight." Giddings v. Astrue, 333 F. App'x 649, 652 (2d Cir. 2009) (summary order) (citing Cruz, 912 F.2d at 13). Finally "if a physician's finding in a report is believed to be insufficiently explained, lacking in support, or inconsistent with the physician's other reports, the ALJ must seek clarification and additional information from the physician" before discrediting the opinion. Calzada v. Asture, 753 F. Supp. 2d 250, 269 (S.D.N.Y. 2010); see also Rosa, 168 F.3d at 79.

Newell's treating psychiatrist, Dr. Aftab, submitted two medical source reports and a letter stating that Newell was unable to work because of his psychiatric impairments. (AR 280, 371-74, 895-98). The ALJ declined to accord these opinions controlling weight, instead assigning each of them "little weight" because they were "poorly supported by [Dr. Aftab's] treatment notes" and "inconsistent with [Newell's] activities of daily living[,] . . . the opinions of other examining mental health providers[,] . . . and the consultative examination of Dr. Helprin in 2009 and opinion of Medical Expert Dr. Fine." (AR 416). The ALJ also characterized Dr. Aftab's opinions as conclusory, unsupported by evidence, and inconsistent. (AR 416-17).

Dr. Aftab sent a letter to the Department of Social Security on April 20, 2010 in which he wrote that he was treating Newell for major depression and generalized anxiety

disorder, that Newell was keeping up with his appointments and taking his medications, and that Newell was "unable to work due to his psychiatric condition." (AR 280). Dr. Aftab provided no evidence to support his conclusion that Newell's mental health conditions prevented him from working. Therefore, the Court finds no error in the ALJ's decision not to accord this conclusory opinion controlling weight. See Halloran, 362 F.3d at 32 (ALJ properly denied controlling weight to "uninformative" and "conclusory" opinions of treating physician).

Substantial evidence also supports the ALJ's decision not to afford controlling weight to Dr. Aftab's Medical Source Statement dated September 23, 2010. This opinion is internally inconsistent; Dr. Aftab checked a box indicating that Newell's ability to interact appropriately with supervisors, co-workers, and the public, and respond to changes in a routine work setting was not affected by his mental impairments, yet also checked boxes indicating that Newell had "marked" limitations in each of these areas. (AR 372). The opinions in this medical source statement are also unsupported by evidence. Although the form provided an area for a narrative description of factors supporting these conclusions, Dr. Aftab wrote only "[patient] has [history] of depression and anxiety." (AR 372).

However, the Court adopts Judge Freeman's recommendation to remand for reconsideration of the treating physician rule as it applies to Dr. Aftab's second Medical Source Statement, a Mental Residual Functional Capacity Statement dated July 31, 2013. In it, Dr. Aftab provides responses to a number of multiple choice questions regarding Newell's abilities to function in a work setting. Dr. Aftab opined that Newell had no limitations in his ability to understand, remember, and carry out very short and simple instructions, "[s]ustain an ordinary routine without special supervision," "[m]ake simple work-related decisions," "[i]nteract appropriately with the public," "[m]aintain socially appropriate behavior, and [] adhere to basic

13

standards of neatness and cleanliness." (AR 896-97). Dr. Aftab concluded that Newell experienced "Category II" limitations (defined as precluding performance for 5% of an 8-hour work day) in areas such as "[m]aintain[ing] attention and concentration for extended periods of time," "[c]omplet[ing] a normal workday and workweek without interruptions from psychologically based symptoms, . . . perform[ing] at a consistent pace without an unreasonable number and length of rest periods," and "[r]espond[ing] appropriately to changes in the work setting." (AR 895-97). Dr. Aftab also concluded that Newell's condition resulted in "Category III" limitations (defined as precluding performance for 10% of an 8-hour work day) in areas such as understanding, remembering, and carrying out detailed instructions. (AR 895-96).

Dr. Aftab also opined that considering Newell's physical and mental limitations together, he would be unable to perform a job, i.e. be "off task," for 15% of a normal 8-hour work day in a "competitive work environment." (AR 897). Dr. Aftab estimated that Newell would be absent or unable to complete an 8-hour work day more than six days a month as a result of his impairments and his need for ongoing and periodic treatment and care for them. (AR 897). Finally, Dr. Aftab indicated that Newell would be 20% as efficient as an average worker and unable to obtain and retain work in a competitive work environment due to his mental and/or physical impairments. (AR 898). In the "[a]dditional comments and remarks section" Dr. Aftab wrote that Newell was "cognitively slow," had poor concentration and attention, and an impaired memory. (AR 898).

Largely for the reasons discussed at length in the R&R, the Court finds that the ALJ failed to properly consider this third submission from Dr. Aftab. (See R&R 66-70). Notably, the ALJ concluded that Dr. Aftab's opinion was inconsistent with his treatment notes

yet also found those notes to be illegible[2], he accorded more weight to the opinion of Medical

Expert Dr. Leslie Fine than to Dr. Aftab despite the fact that Dr. Fine had not examined Newell

or reviewed any of Newell's psychiatric records before she offered testimony on Newell's

mental impairments at the September 24, 2010 hearing, (R&R 66, 68); see Selian, 708 F.3d at

419 ("We have . . . cautioned that ALJs should not rely heavily on the findings of consultative

physicians after a single examination."), and the ALJ failed to identify which portions of Dr.

Aftab's 2013 report conflicted with the opinions of other mental health providers.  The Court

also notes that Dr. Aftab's opinions in his July 2013 statement appear generally consistent with

the opinions of Dr. Helprin from 2009 and 2015 in which she also concluded that Newell could

handle simple instructions and sometimes more detailed ones, could make simple work-related

decisions, and suffered from limitations in areas of attention, concentration and memory.  (AR

223-24, 1124-25).  Additionally, the ALJ failed to explain why Newell's daily activities such as

driving, laundry, microwaving frozen meals, and making occasional pizza deliveries are

inconsistent with Dr. Aftab's conclusions that Newell can, for example, understand, remember

and carry out simple instructions and "[m]ake simple work-related decisions," but has difficulty

with detailed instructions, and "[m]aintain[ing] attention and concentration for extended periods

---

[2] The Court declines to adopt Judge Freeman's recommendation that upon remand, the ALJ should be directed to follow up with Dr. Aftab to procure transcribed treatment notes. (R&R 67).  The ALJ sent a letter to Dr. Aftab on December 24, 2014 requesting transcribed copies of his "illegible" treatment notes, (AR 704), but there is no evidence that Dr. Aftab ever responded to this request. (See Comm'r's Mem. (Dkt. 16) 14 n.7).  No more was required under the ALJ's duty to develop the record. See 20 C.F.R. § 404.1512 (requiring a "reasonable effort" to obtain medical records including an initial request and one follow-up request if the records are not initially received); 20 C.F.R. § 404.1520b (ALJ has discretion to decide whether to re-contact a treating physician in the event of incomplete evidence).  The Court also declines to adopt Judge Freeman's recommendation that the ALJ be directed to obtain medical source statements from medical providers who treated Newell for his physical impairments during the relevant period. (R&R 70 n.35).  The record contains all of Newell's medical records regarding his treatment for physical ailments as well as medical source statements from his chiropractor (2009), a consultative internist (2009), and a consultative orthopedic surgeon (2015). (See AR 226-30, 254-59, 1173-81).  Thus the record contained sufficient evidence for the ALJ to make a disability determination.

of time." (AR 895-97). The conclusions in Dr. Aftab's 2013 statement are also consistent with Newell's own testimony that he has trouble with memory, concentration, and comprehension. (AR 223, 512-13).

The inconsistencies between Dr. Aftab's first and second medical source statements and the fact that his ultimate conclusion – that Newell is unable to work due to his mental impairments – is not echoed by any of the other mental health professionals to have examined Newell may mean that his opinion is not entitled to controlling weight. However, as the treating physician, his opinion is still entitled to "some extra weight," Cruz, 912 F.2d at 12, and the ALJ failed to provide good reasons for according Dr. Aftab's July 31, 2013 report only "little weight" in the disability determination. Therefore, the Court adopts Judge Freeman's R&R insofar as it recommends remand for appropriate application of the treating physician rule to Dr. Aftab's Mental Residual Functional Capacity Statement of July 31, 2013.

### b. Credibility Determination.

In evaluating a claimant's credibility, "the ALJ is required to take the claimant's reports of pain and other limitations into account, but is not required to accept the claimant's subjective complaints without question; he may exercise discretion in weighing the credibility of the claimant's testimony in light of the other evidence in the record." Genier, 606 F.3d at 49 (internal citation omitted). The regulations set out a two-step process for this credibility determination. First, "the ALJ must decide whether the claimant suffers from a medically determinable impairment that could reasonably be expected to produce the symptoms alleged." Id. (citing 20 C.F.R. § 404.1529(b)). Second, if the ALJ determines that the claimant suffers from such an impairment, "the ALJ must consider the extent to which the claimant's symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence

of record." Id. (citing 20 C.F.R. § 404.1529(a)) (internal quotation marks and alterations omitted). The regulations require the ALJ to consider several factors, including "(1) the individual's daily activities; (2) the location, duration, frequency, and intensity of the individual's pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, the individual received or has received for relief of pain or other symptoms; (6) any measures other than treatment the individual uses or has used to relieve pain or other symptoms . . . ; and (7) any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms." Sarchese v. Barnhart, No. 01 Civ. 2172 (JG), 2002 WL 1732802, at *7 (E.D.N.Y. July 19, 2002) (citing 20 C.F.R. § 404.1529(c)). Ultimately "it is the function of the Commissioner, not reviewing courts, to appraise witness credibility." Carvey v. Astrue, 380 F. App'x 50, 53 (2d Cir. 2010) (summary order) (citing Aponte v. Sec'y Dep't of Health & Human Servs., 728 F.2d 588, 591 (2d Cir. 1984)).

After finding that Newell suffered from a medically determinable impairment that could reasonably be expected to produce the symptoms alleged, (AR 414), the ALJ went on to find that Newell's "allegations of debilitating symptoms" were "not wholly credible." (AR 421). The ALJ based this determination on a number of factors including evidence of Newell's activities of daily living, the treatment he had received, the effectiveness of the medications he took, his prior work history and his demeanor at the hearing on February 3, 2015. (AR 421-23). Judge Freeman found that these reasons were unpersuasive and not supported by substantial evidence. (R&R 71-77).

For the reasons stated in the R&R, the Court agrees that in making his adverse credibility determination, the ALJ placed undue weight on evidence that Newell periodically delivered pizzas for a local restaurant, cared for his mother when she was being treated for cancer, and helped organize a fundraiser. (See R&R 71-75). However, the ALJ's ultimate determination that Newell's allegations concerning the intensity and severity of his symptoms was not entirely credible is supported by substantial evidence. The evidence regarding Newell's daily activities is conflicting. For example, Newell reported that he does not require assistance to pay bills, yet he also testified that he does not have any bills and that the one bill he does have is in collections. (Compare AR 160, 224 with AR 488, 500-01). Similarly, Dr. Helprin described Newell as "well groomed" while his therapist commented on his body odor and noted that his hygiene was "not in good shape." (Compare AR 223 with AR 1138-39). However, "[i]t is the function of the [Commissioner], not [the reviewing courts], to resolve evidentiary conflicts," Aponte, 728 F.2d at 591 (citing Carroll v. Sec'y of Health & Human Servs., 705 F.2d 638, 642 (2d Cir. 1982)), and a "reasonable mind" could accept the evidence in the record "as adequate to support [the ALJ's] conclusion." Richardson, 402 U.S. at 401 (defining substantial evidence standard).

In addition, the ALJ properly considered the factors laid out in 20 C.F.R. § 404.1529(c) including Newell's daily activities, medical treatment, and medications. (AR 422). He also appropriately considered Newell's demeanor and behavior at the hearing finding that Newell "betrayed no evidence of debilitating symptoms while testifying." (AR 423); Tarsia v. Astrue, 418 F. App'x 16, 19 (2d Cir. 2011) ("[W]e show 'special deference' to credibility determinations made by the ALJ, 'who had the opportunity to observe the witnesses' demeanor.'") (quoting Yellow Freight Sys. Inc. v. Reich, 38 F.3d 76, 81 (2d Cir. 1994)). His

conclusions that Newell had generally received only conservative or routine treatment for his physical ailments and that his conditions were effectively managed by medications are supported by the record. Finally, in assessing Newell's overall credibility, the ALJ appropriately considered the fact that when asked at the 2015 hearing how long he had been delivering pizzas, Newell replied "[m]ostly about a month ago" despite the fact that records show that he discussed delivering pizzas for the restaurant with his therapist as early as 2013. (AR 522, 1137).

Mindful of the fact that it is left to the ALJ to evaluate the credibility of the claimant, Aponte, 728 F.2d at 591, the Court finds that the ALJ's credibility determination is supported by substantial evidence and therefore declines to adopt Judge Freeman's recommendation to remand for reassessment of Newell's credibility.

CONCLUSION

Having reviewed the R&R de novo, the Court adopts in substantial part Judge Freeman's R&R and modifies it only insofar as (1) the Court concludes that the Commissioner's credibility determination is supported by substantial evidence; and (2) the scope of the remand is not for the purpose of calculation and payment of benefits but to consider whether claimant's condition meets the requirements of Listing 12.05C, and for the proper application of the treating physician rule. The case is remanded for further administrative proceedings consistent with this opinion pursuant to 42 U.S.C. § 405(g). Newell's motion for judgment on the pleadings is GRANTED insofar as the matter is remanded for a determination under Listing 12.05C and proper application of the treating physician rule. (Dkt. 19). The Commissioner's motion for judgement on the pleadings is DENIED. (Dkt. 15).

SO ORDERED.

P. Kevin Castel
United States District Judge

Dated: New York, New York
       March 31, 2017